IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GWENDOLYN DOLORES RODGERS PATRICK, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALTON RODGERS, DECEASED<br><br>　　Plaintiff,<br><br>v.<br><br>BARRY MARTIN, et al.,<br><br>　　Defendants. | §§§§§§§§§§§§§ | 2:16-CV-216-D-BR |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DENY THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE STATE OF TEXAS

Before the Court is the Motion for Judgment on the Pleadings (the "Motion") filed by the State of Texas (the "State"). [ECF 236]. Plaintiff GWENDOLYN DOLORES RODGERS PATRICK (proceeding on her own behalf and on behalf of her son's estate) filed a Response to the Motion. [ECF 239]. This Court has reviewed all the arguments of the parties set forth in these documents, as well as the plaintiff's original complaint and subsequent amended complaints.[1]

Plaintiff brings claims of wrongful death, deliberate indifference in the failure to provide a safe environment and/or protect an inmate, deliberate indifference to the medical needs of an inmate in violation of the Eighth and Fourteenth Amendments, denial of access to the courts, and intentional discrimination under both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). These claims arise from the alleged treatment of her deceased son, Texas Department of Criminal Justice ("TDCJ") inmate ALTON RODGERS ("Rodgers") by

---

[1] The Court notes that plaintiff has filed several amended complaints in this matter. The Court granted permission [ECF 218] for plaintiff to file her latest amended complaint, and plaintiff filed this complaint on November 28, 2017. [ECF 219]. This is the live pleading for purposes of the Motion filed by the State.

multiple defendants, including the State, TDCJ and TDCJ staff members, and Texas Tech University Health Sciences Center ("TTUHSC") and TTUHSC staff members. These claims arose while Rodgers was incarcerated at the TDCJ Clements Unit during the relevant time outlined in the amended complaint prior to his death.

I.
FACTUAL AND PROCEDURAL HISTORY OF PLAINTIFF'S CLAIMS

A. FACTUAL OVERVIEW FROM THE AMENDED COMPLAINT[2]

Rodgers was a TDCJ inmate housed at the Clements Unit of TDCJ from 2011 until the time of his death on January 18, 2016. Starting in 2011, Rodgers began exhibiting signs of psychosis. Prior to 2015, Rodgers was diagnosed with paranoid schizophrenia, psychosis NOS (not otherwise specified), undifferentiated schizophrenia, schizophreniform disorder, schizoaffective disorder and bipolar disorder. Until mid-2015 Rodgers was prescribed antipsychotic medications by various psychiatrists.

Rodgers had compliance issues with his medications, but would return to compliance upon further intervention with medical and psychiatry staff. Rodgers had periods where his mental and physical health would decline as a result of medication non-compliance, but his health would improve upon reinstatement of his medication. During the second half of 2015, Rodgers again began having compliance issues with his medication. TTUHSC psychiatrist Dr. Ikechukwu Ofomata ordered bloodwork on August 8, 2015 to determine if Rodgers was compliant with his current psychotropic medication. When the results came back showing Rodgers was in non-compliance, Dr. Ofomata took Rodgers off all psychotropic medications.

In October of 2015, Rodgers submitted requests to be seen by mental health providers

---

[2] The Court accepts these facts as true, and construes all allegations herein in the light most favorable to the plaintiff, for purposes of deciding this Motion.

and requested a return to his psychotropic medications. He complained of hearing voices and presented with signs of deteriorating mental health at that time. He was seen by a mental health staff member, and no mental health treatment was provided beyond an evaluation. On November 24, 2015, Dr. Ofomata again saw Rodgers for an evaluation. Dr. Ofomata diagnosed Rodgers with intermittent explosive disorder at this evaluation and placed Rodgers on a new medication, Trazadone, used to treat sleep disorders, depression and anxiety.

From that November appointment with Dr. Ofomata until two days before his mid-January 2016 death, Rodgers was not provided any mental health treatment or follow-up care. Prior to being taken off of his psychotropic medications, Rodgers regularly submitted mental health treatment requests and was repeatedly seen by medical personnel. After the withdrawal of these medications and the November 2015 evaluation, there is no medical or mental health documentation concerning the treatment of Rodgers.

Rodgers cell was not opened from November 30, 2015 until January 5, 2016, a period of 36 consecutive days. Then, from January 5, 2016, until he was found unresponsive on January 18, 2016, his cell was not opened, another 13 consecutive days. Medical records from October of 2015 indicate that Rodgers was 6'3" tall and weighed 167 pounds. Rodgers weight was not taken again until the time of his death in mid-January 2016, when he weighed 116 pounds. Rodgers' cellmate, Joe Greggs, assaulted Rodgers by beating his head against concrete floors, walls, and other objects on five separate occasions in January of 2016. His cause of death from autopsy is brain injury from these beatings and advanced starvation from lack of proper nutrition, likely caused by his paranoia in believing his food was tainted as a result of his mental illness, compounded possibly by his cellmate's abuse.

On January 10, 2016, TDCJ defendant officer Curtis Taylor brought food to Rodgers and

Greggs' cell and noticed injuries on Rodgers. Taylor failed to report these injuries because of his belief of a pervasive practice by TDCJ supervisors at the Clements Unit not to address issues of inmate on inmate violence. Additionally, Clements Unit officers deliberately created false records to indicate supervision and monitoring of inmates, while shirking their responsibilities to monitor these same inmates, including those with mental health issues like Rodgers.

On November 6, 2015, Rodgers had a prior altercation with a previous cellmate as a result of his mental illness, and was a known risk to be housed in general population. Under the ADA and RA, the State and TDCJ had specific duties to accommodate Rodgers' mental illnesses. Rodgers was not provided special housing or stricter supervision and monitoring to evaluate his mental health. Rodgers was not provided follow-up care after being taken off psychotropic medications.

TTUHSC employees, including roving nursing staff, did not provide Rodgers with care for his advancing starvation or his bedridden condition. These employees did not confirm that Rodgers was actually taking any medication prescribed to him. These employees also noticed that Rodgers was housed in a dark cell and was usually in bed facing away from the door when medication was dispensed. These employees did not take any action as a result of Rodgers' lack of responsiveness in the final month of his life. When Rodgers was found unresponsive and later pronounced dead on January 18, 2016, he had been provided with no mental health treatment for over two months.

B.  PROCEDURAL HISTORY OF CASE

On October 11, 2016 plaintiff filed her original complaint. Summons were issued and answers were filed by original parties to the suit from November of 2016 through January of 2017. On February 8, 2017, plaintiff filed her first amended complaint, dismissed that complaint shortly thereafter, and filed a new amended complaint on February 15, 2017. In these first complaints, plaintiff sued employees of TDCJ and TTUHSC, but did not bring claims against the entities themselves or the State; plaintiff sued most of the defendant employees in their individual capacities.

After a period of non-binding mediations by the parties, plaintiff filed a third amended complaint on July 21, 2017. This third amended complaint brought claims directly against the State, TDCJ and TTUHSC for the first time. Additional amended answers and original answers were filed and discovery disputes between the parties took place. Plaintiff's request to file a fourth amended complaint was granted, and the final complaint was filed on November 28, 2017, which encompasses all of plaintiff's current claims for relief. On January 25, 2018, the State filed the Motion before the Court.

## II.
## PLAINTIFF'S CLAIMS FOR RELIEF IN AMENDED COMPLAINT

Plaintiff makes the following claims in her Amended Complaint:

1. Wrongful death by:

    The deliberate indifference claims encompassed below were the direct and proximate cause of Rodgers' death on January 18, 2016.

2. Deliberate indifference to safety and security needs and deliberate indifference to medical needs in violation of the Eighth Amendment by:

    a. Placing Rodgers, a known mental health patient, in a cell with another inmate and not checking up on him for two months.
    b. Observing signs of abuse on Rodgers and failing to report these signs of abuse, possibly at the hands of his cellmate.

    c. Failing to ensure Rodgers was eating during the last two months of his life.

    d. Failing to ensure Rodgers was taking his prescribed medications.

    e. Failing to conduct cell inspections, cell searches, or clean and inspect Rodgers and Gregg's cell.

    f. Certain TDCJ supervisors failed to adequately supervise the actions and behaviors of subordinates and also created an atmosphere where false reporting took place.

3. Violations of the right of access to the courts when TDCJ employees and supervisors concealed, falsified and destroyed evidence regarding Rodgers' treatment.

4. Violations of the ADA and RA by:

    a. Failing to use federal monies provided under the RA to make reasonable accommodations for Rodgers, a person with documented mental and physical disabilities, through program activities, facilities, and services. Failing to modify facilities or services to make these accommodations.

    b. Under Title II of the ADA, failing to make reasonable accommodations for Rodgers, a person with documented mental and physical disabilities, through program activities, facilities, and services. Failing to modify facilities or services to make these accommodations.

    c. Discriminating against Rodgers by placing him with another cellmate, days after an altercation with a previous cellmate, and failing to monitor the situation.

## III.
## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009). A court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A

plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

A court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, all well-pleaded factual allegations are taken as true and all allegations are liberally construed in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774.

IV.
ANALYSIS

A. STATE'S REMARKS ON ELEVENTH AMENDMENT IMMUNITY

The State argues that the Fifth Circuit has created a test to determine when a state agency is acting as the "alter ego" of the State itself, such that the agency is entitled to the State's Eleventh Amendment sovereign immunity for purposes of suit. At first glance, it appears the State asserts sovereign immunity as the basis for its request for judgment on the pleadings, but a

closer reading of the Motion indicates that the State is actually using these Eleventh Immunity cases for their reasoning that TDCJ and TTUHSC are both "alter egos" of the State, and therefore are "duplicative parties." TDCJ is an "alter ego" of the State in considering suits for the treatment of inmates, and employees contracting with TTUHSC to provide care for inmates would be subject to the same criteria. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

As correctly acknowledged by both parties, the State has waived sovereign immunity in cases under the ADA and RA; thus, Eleventh Amendment immunity is not cause to dismiss the State in a judgment on the pleadings. *See* 42 U.S.C. § 12202; *see also United States v. Georgia*, 546 U.S. 151, 159 (2006); *Bennet-Nelson v. Louisiana Bd. Of Regents*, 431 F.3d 448 (5th Cir. 2005); *O'Neil v. Texas Department of Criminal Justice*, 804 F. Supp. 532, 539 (N.D. Tex. 2011). The Court must alternatively consider when a party, specifically a sovereign party, is subject to dismissal at the pleading stage as "duplicative" and therefore unnecessary to the lawsuit.

B. DUPLICATE PARTIES

The State argues "[i]n naming individual employees of TDCJ and TTUHSC in their official capacities in her Original Petition, as well as the agencies themselves in her amended pleadings, the State of Texas has been a party to this action from the filing of the Original Complaint." [ECF 236 at 5]. The Court agrees with this statement. However, the State's entire argument for a judgment on the pleadings rests in the next two sentences of the Motion, in that proceedings against the State are therefore "duplicative" and a waste of "judicial economy and resources." *Id*. The State cites no authority for dismissal of a party as "duplicative."

Thus, the Court is left to determine in what situation a sovereign party should be *dismissed* from a lawsuit as unnecessary to any of the plaintiff's claims. Plaintiff has filed a response indicating that preserving the State as a party serves an independent meaningful

purpose, and plaintiff correctly points out that TDCJ and TTUHSC have indicated through pleadings that the State has independent liability in regards to the claims made by plaintiff. [ECF 239 at 4-5].

In cases where courts have dismissed claims against a party in favor of pursuing claims against a government entity, it is the *entity* that remains a party and the individual employees sued in their official capacities are released from suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding it redundant to sue both a municipality and its officers); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999); *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996) (when a civil rights plaintiff also sues the municipality directly, district courts generally dismiss the official capacity suits against the municipal employees). Additionally, as the State is ultimately the party that will be liable, this Court can find no authority for dismissing the State itself; further, the State has provided none.

What is clear is that by naming TDCJ, TTUHSC and their respective employees sued in their official capacities, plaintiff has sued the State from the beginning; the Court believes the plaintiff is entitled to continue to pursue claims against the State. "An official capacity claim against a government officer 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Robinson v. Purkey*, --- F.R.D. --- (2018), 2018 WL 2862772 at *30 (M.D. Tenn. 2018) (citing *Kentucky*, 473 U.S. at 165-66 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In an official capacity suit, the government entity is "the only true defendant." *Id*. (citing *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

The plaintiff correctly argues that the ADA defines a "public entity" as "any State or local government" *and* "any department, agency … or other instrumentality of the State…" 42

U.S.C. § 12131(1)(a)-(b). By defining a public entity to encompass all of these separate entities, Congress has allowed suit against each separate entity as a party in an ADA suit. Thus, the statute itself does not prohibit suit against both the State and its agencies.

Based on the pleadings in the amended complaint, it is possible that not all claims against TDCJ and TTUHSC or employees sued in their official capacity encompass the claims made against the State under the ADA and RA. Guidance published by the U.S. Department of Justice ("DOJ") that addresses private correctional facilities operating as state facilities is instructive to the Court concerning the ultimate responsibility of the State itself under Title II of the ADA, as alleged in the live complaint. Specifically, the DOJ opined that "even if the State enters into a contractual, licensing, or other arrangement for correctional services with a public entity that has its own Title II obligations, the State is still responsible for ensuring that the other public entity complies with Title II in providing these services." *See* Appendix to Part 35—Guidance to Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services. 28 C.F.R. pt. 35, app. A (eff. Mar. 15, 2011).

A State cannot escape its obligations under Title II by contracting out the services for which it is ultimately responsible; thus, the State may have independent duties in this case under Title II of the ADA. Therefore, the Court is unable, at this stage of proceedings, to determine with confidence whether the claims asserted by plaintiff against the State are truly duplicative of any claims asserted against other entities or parties sued in their official capacities.

Further, the State has not persuaded the Court that proceeding against the State and these other parties would waste "judicial resources." Lawsuits often proceed against parties who have joint liability in claims or ultimately are found to maintain shared responsibilities for claims. The plaintiff has properly articulated claims against the State in her amended complaint, and the

Court finds no grounds for dismissal as a "duplicative" party.

Also, in this case, some defendants are not merely employees of the governmental entities being sued; instead, they are medical personnel under contract to those entities, and these official and individual capacity suits can encompass claims where the individuals, not the entities generally, bear ultimate responsibility for their actions. As such, a lawsuit against TTUHSC and its employees or contract employees might encompass separate liability from the State. Absent binding, persuasive authority supporting dismissal, the Court declines to dismiss plaintiff's suit against the State as duplicative.

## V.
## RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion for Judgment on the Pleadings [ECF 236] filed by the State be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 29, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the

signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).