IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GWENDOLYN DOLORES RODGERS PATRICK, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF ALTON RODGERS, DECEASED | § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | 2:16-CV-216-D |
| BARRY MARTIN, et al., | § § § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

I

Plaintiff Gwendolyn Dolores Rodgers Patrick ("Patrick") moves to vacate the August 10, 2017 protective order preventing disclosure of an investigative report disclosed by the Office of the Inspector General ("OIG"). The report is composed of documents created during the investigation into the death of her son, Alton Rodgers ("Alton"), while he was incarcerated at the Texas Department of Criminal Justice ("TDCJ") Clements Unit. Non-party OIG originally intervened in this lawsuit to object to the release of information contained in the report and to seek the protective order to prohibit the release of this information beyond the specific parties to this lawsuit. The primary concern for the protection of this information at the time of the entry of the protective order involved the pending prosecution of another inmate at the Clements Unit involved in Alton's death, Joe Greggs ("Greggs").

OIG originally opposed Patrick's motion to vacate the protective order. Since the time of the opposition, however, Greggs has pleaded guilty to five counts of aggravated assault, and OIG

has filed a notice of the plea and an amended response indicating that OIG is no longer opposed to the release of the information in the report, as redacted by the court's order. The court ordered Patrick to file a redacted version of the OIG report that protected confidential and legally protected information. Patrick has now submitted the OIG report in redacted form. The redacted report still contains confidential medical records. Patrick has indicated that, as the executor of Alton's estate, she waives Health Insurance Portability and Accountability Act ("HIPPA") claims as to the release of Alton's medical records.

The court has additional concerns, however, about the release of medical records pertaining to inmate Greggs, who has not waived the release of his medical records under HIPPA. In light of this new information, the court grants Patrick's motion to vacate the protective order and will unseal access to the OIG investigative report, as specifically outlined in this memorandum opinion and order. But certain parts of the report containing Greggs's medical records will remain under seal. Further, the summary judgment evidence accompanying the motions for summary judgment, responses, and replies will remain under seal because they contain an unredacted version of this information.

II

"It is well established that a district court retains the power to modify or lift confidentiality orders that it has entered." *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3d Cir. 1994); *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (discussing right of district court to modify a protective order); *In re United States Motion to Modify Sealing Orders*, 2004 WL 5584146, at *2 (E.D. Tex. June 8, 2004) (same). "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that

is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Pansy*, 23 F.3d at 790. The court must weigh the need for confidentiality of settlement related documents against the public's right of access. *Id.*

Courts have looked to four factors to guide consideration of whether a modification is appropriate, including: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the reliance on the order; and (4) whether good cause exists for the modification." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 2009 WL 3247432, at *3 (S.D. Tex. Sep. 29, 2009); *Bayer AG & Miles, Inc. v. Barr Labs, Inc*. 162 F.R.D. 456, 458 (S.D.N.Y. 1995).

As to the first factor, relevant to the nature of a confidentiality order is "its scope and whether it was court imposed or stipulated to by the parties." *Murata*, 234 F.R.D. at 179 (quoting *Bayer*, 162 F.R.D. at 465). Courts are generally more hesitant to modify narrowly defined orders that pertain to "a specific type of identified information," as opposed to blanket confidentiality orders. *Id.* "An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order." *Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (Fitzwater, C.J.) (quoting *Paine v. City of Chicago*, 2006 WL 3065515, at *2 (N.D. Ill. Oct. 26, 2006)). "As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found within [the protective order's] four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id.*

As to the second factor regarding foreseeability, the relevant inquiry is "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Murata*, 234 F.R.D. at 180 (quoting *Bayer*, 162 F.R.D. at 466).

As to the third factor—reliance—the court should consider "the extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Id.* It is "presumptively unfair . . . to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001)).

As to the fourth factor, in evaluating whether good cause for modification exists, "the court must weigh [the] need for modification against [the] need for protection, and ought to factor in the availability of alternatives to better achieve both . . . goals." *Murata*, 234 F.R.D. at 180.

Courts have held that "a party seeking to modify an agreed protective order bears the burden of demonstrating good cause exists to modify the order." *United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) (O'Connor, J.) (citing *Orthoflex*, 2013 WL 3095106, at *3). On the other hand, courts have also held that, "[i]f good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection." *Diamond Consortium, Inc. v. Manookian*, 2017 WL 2364040, at *1 (E.D. Tex. May 31, 2017) (citing *United States v. Homeward Residential, Inc.*, 2016 WL 279543, at *4 (E.D. Tex. Jan. 22, 2016); *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 2009 WL 3247432, at *2. Thus the court must take into account these four factors in determine whether the protective order should be vacated.

III

In this instance, non-party OIG sought the protective order to prevent disclosure of information likely critical to the investigation and prosecution of TDCJ inmate Greggs. OIG has now consented to the release of all information in the OIG report, subject to the redactions ordered by the court. The court therefore finds that the four-factor balance test favors vacating the protective order and the release of this information.

IV

Patrick's motion to vacate the protective order is granted. The court notes that the OIG report as redacted still contains direct-line work extensions for government employees. Such information is usually protected from disclosure, but the court is not legally required to protect such information. Thus the court will give parties a final opportunity to file any objections to the release of the redacted report. If no objections are filed by July 30, 2019, the clerk is directed to unseal ECF 444 as outlined below.

If no objections have been received from the parties to this memorandum opinion and order by July 31, 2019, the clerk of court is directed to unseal ECF 444, except that ECF 444-3, ECF 444-4, ECF 444-6, and ECF 444-7 shall not be unsealed because they contain medical records subject to protections under HIPPA.[*] If Patrick wishes for information contained in these subsections of ECF 444 to be unsealed, she must remove all information subject to protection under HIPPA and resubmit these newly redacted records for the court's consideration for release.

---

[*]The court has found medical records on pages 90-102 in ECF 444-3, pages 1-4 of ECF 444-4, pages 14, 65-68 of ECF 444-6, and pages 15-52 of ECF 444-7 that are subject to HIPPA protections.

To the extent, if any, that ECF 444 contains information not provided to the court as part of the summary judgment evidence, such additional information will not be considered by the court in deciding the motions for summary judgment by defendants.

**SO ORDERED**.

July 2, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE